Fowler, Appellant *v.* Smith.

Argued April 15, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*John H. Pope,* with him *Reed J. Davis,* for appellant.

*Frederick N. Egler,* with him *Richard C. Schomaker,* and *Egler, McGregor & Reinstadtler,* for appellee.

OPINION BY CERCONE, J., September 18, 1970:

This is an appeal from the lower court's grant to defendant of a judgment n.o.v. after a jury's verdict in favor of the plaintiff in the amount of $7,500.00. The lower court found plaintiff to be contributorily negligent as a matter of law and thus not entitled to the jury's verdict. Plaintiff has appealed to this court.

Our study of the case compels us to affirm the jury's verdict in favor of plaintiff and to hold as error

the grant of the judgment n.o.v. Viewing, as we must, the evidence in the light most favorable to plaintiff and giving him the benefit of all favorable inferences, and resolving all conflicts in the testimony in his favor, we find that the record and the law supports the jury's determination.

The record reveals that plaintiff was proceeding west on Jamison Street, in the County of Allegheny, Borough of Monroeville, Pennsylvania, approaching that street's "T" intersection with Monroeville Road which runs north and south. Jamison Street and Monroeville Road are two-lane highways. Plaintiff was approaching Monroeville Road for the purpose of making a right turn thereon, and as he so approached the intersection, the traffic light, which is suspended in the center of the intersection, showed red for his direction of travel. He stopped ten (10) feet from the curb lane, from which point his view to the left was 150 feet, and looked both to his left and right. When the light turned green, plaintiff again looked to his left and then to his right, noting that a car to his right, which he had been observing, had come to a stop at the light. Plaintiff then began his right turn onto Monroeville Road, and when he was ten (10) feet onto Monroeville Road, with the rear of his car still on Jamison, the left front of his car was struck by the automobile driven by defendant, who had come from the left on Monroeville Road, the impact knocking the right side of plaintiff's car into a corner telephone pole. Defendant's car proceeded 300 feet down the road after the impact.

One of the plaintiff's witnesses testified that defendant had been driving slowly (but gave no estimate of the speed), talking and gesturing to his wife, and that the light was red before defendant entered the intersection, and that defendant went through the red light, struck the plaintiff's car and continued 200 or 300 feet down the road.

Another of plaintiff's witnesses testified that the light was red for a second or more as the defendant's car approached from the opposite direction, and that the defendant's car never stopped but came through and hit the plaintiff.

Under the above facts the court below held the plaintiff not entitled to the jury's verdict, it relying on the rule which it states to be "If the facts surrounding an intersection collision show conclusively that the motorist must not have looked for approaching traffic before entering the intersection, then the motorist is deemed not to have looked, whether he said he did or not, and is contributorily negligent as a matter of law." For this rule and the application thereof, the court below relies on the decision in *Perpetua v. Philadelphia Transportation Company*, 380 Pa. 561 (1955). However, a reading of that decision clearly reveals it was limited to the fact situation there involved, that of an intersection of three avenues "each wide enough to accommodate at least six lanes of traffic" which complicated situation imposed the duty to continue to look while traversing the intersection. The Court there held, at page 563, that the record was barren of any testimony as to whether plaintiff "continued to look as he proceeded through the intersection", the Court noting "the law only makes obligatory the rule of common sense regarding the duty of a driver at the intersection of streets, where traffic is very dangerous because conflicting."

The intersection in the instant case is that of one two-lane highway leading into and ending at its intersection with another two-lane highway, or what is commonly known as a "T" highway. Once plaintiff stopped and had a clear view of 150 feet, he could logically and legally assume that it was safe for him to commence his turn in accordance with the authority of the green light which was in his favor. After that, it was his

duty to continue to look in the direction of his turn. In *Cericola v. Redmon,* 182 Pa. Superior Ct. 19 (1956), plaintiff looked as he approached the intersection, saw nothing, then proceeded and was struck by defendant whom plaintiff stated he saw only 4 or 5 feet away, almost at the time of impact. We there emphasized the fact that the green light was in plaintiff's favor and stated: ". . . he must not be held to the exact degree of care that would have been required of him had there been no light or stop sign in his favor at the intersection. To hold otherwise would thwart the purpose of through highways and traffic lights to facilitate the flow of traffic . . . Cericola did not have a legal right to go blindly into the intersection regardless of other vehicles that might have already been within it. But, this he did not do. As he approached the intersection he did look for traffic and saw nothing approaching. Under the circumstances of this case the question of contributory negligence was for the jury."

The fact that plaintiff may have had a more distant view at some point closer to the curb would not convict him of contributory negligence in failing to avail himself of that additional view, for there is no duty imposed upon one proceeding with the authority of the green light to look all the way down the intersecting street to ascertain the presence of a motorist whose collision with plaintiff could not be anticipated in view of the distance and the traffic signal. See *Kline v. Kachmar,* 360 Pa. 396 (1948).

Futhermore, the testimony of one of plaintiff's witnesses would indicate that plaintiff's view from the curb would not be as great as estimated by plaintiff himself, and of course, it was for the jury to reconcile any conflicting testimony. As stated in *Cardone v. Sheldon Hotel Corp.,* 160 Pa. Superior Ct. 193 (1947): ". . . if on one part of the plaintiff's testimony or that of a witness he is entitled to go to the jury and on another

part he is not . . . it is for the jury to reconcile such conflicting statements and say which shall prevail." So, also, with respect to the testimony of the plaintiff's witness that defendant proceeded slowly on Monroeville Road, through the red light and to the point of collision, it was for the jury to reconcile this general testimony, which did not include any estimate as to rate of speed, with the uncontradicted evidence that defendant did not avoid the collision though plaintiff was already committed to making his right turn and that the force of the impact caused plaintiff's vehicle to be pushed into the corner telephone pole and defendant's vehicle to travel another 300 feet before coming to a stop.

It is our holding that under all the facts and circumstances of this case, it was for the jury to determine first, whether or not plaintiff had allowed himself a sufficient view to the left before making his right turn and second, whether or not defendant was within such view at the time plaintiff committed himself to making that turn. Such findings were matters peculiarly within the province of the jury as they depended not on incontrovertible physical facts but on the existence of varying and estimated distances and speeds, which distances and speeds in turn depended on oral testimony as supplemented by the evidence of the force and manner of collision.

Judgment and order entered below reversed and record remanded with directions to enter judgment on the verdict.

---

DISSENTING OPINION BY JACOBS, J.:

I respectfully dissent because I feel that the court below correctly analyzed the facts and properly applied our case law in granting judgment n.o.v.

To the facts as stated by the majority I would add the following: The collision occurred at about 1:45 p.m.

on a clear and sunny day. The roadway was dry. Appellant testified that appellee was moving at approximately 20 miles per hour after the impact.

A jury returned a verdict for the appellant. Appellee moved for judgment n.o.v. on the ground that appellant was guilty of contributory negligence as a matter of law. The court en banc granted appellee's motion. It held that the circumstances of the case, including the fact that appellant did not see appellee prior to the collision, were positive proof that he could not have looked before entering the intersection and made him automatically contributorily negligent in the absence of some reasonable explanation. The court found that there was no reasonable explanation why appellant did not see appellee.

As argued by appellant a motorist with a green light in his favor cannot be held to the same high degree of care as a driver at an unregulated intersection. *Jordan v. Kennedy,* 180 Pa. Superior Ct. 593, 119 A. 2d 679 (1956), quoted with approval in *Smith v. United News Co.,* 413 Pa. 243, 196 A. 2d 302 (1964). If in fact appellant looked to his left after the light changed in his favor when he was a scant ten feet from the intersection, could see 150 feet and saw no one coming, he had a right to assume that any driver approaching outside his vision would stop for the red light and he could not be declared negligent as a matter of law. *Topelski v. Universal South Side Autos, Inc.,* 407 Pa. 339, 180 A. 2d 414 (1962). However, a driver who fails to look for traffic on an intersecting street before he enters an intersection convicts himself of contributory negligence even though he has a traffic signal in his favor. *Lewis v. Quinn,* 376 Pa. 109, 101 A. 2d 382 (1954). The case thus turns on whether or not the appellant looked to his left after the light turned green.

In the usual case such a factual determination would be for the jury. The court below, in determin-

ing that appellant did not look, held that the facts in the case showed that had appellant looked he would have seen appellee. We held such a determination by the court to be proper in an intersection case and granted judgment n.o.v. in *Clee v. Brinks, Inc.,* 135 Pa. Superior Ct. 345, 5 A. 2d 387 (1939). In that case plaintiff could see 100 feet down the intersecting avenue from whence defendant came. We stated the rule as follows: "The law will not permit a driver to say that he looked where he had an unobstructed view without seeing what must have been within the range of his vision." 135 Pa. Superior Ct. at 354, 5 A. 2d at 392. In *Sargeant v. Ayers,* 358 Pa. 393, 398, 57 A. 2d 881, 883 (1948), a case sustaining a compulsory nonsuit where the physical circumstances made it evident that a good view of approaching vehicles was available to both drivers, the Supreme Court said, "The plaintiff's admitted failure to see the approaching truck is explainable only on the ground that he was inattentive; and inattention in such a situation is negligence." See also *Smith v. United News Co.,* supra at 249, 196 A. 2d at 306.

In considering the testimony in the light most favorable to the appellant, the court was not required to ignore the limiting evidence of appellant's own witnesses or the undisputed physical facts. *Litwinowitch v. Oriental Nav. Co.,* 311 Pa. 257, 166 A. 911 (1933). A witness called by appellant had followed appellee for a mile prior to the collision and testified that appellee was driving "extremely slow" and continued at the same speed into the intersection. Appellant himself testified that he could see 150 feet to his left as the light changed in his favor. Appellee came down Monroeville Road from appellant's left. Only one-half of appellant's car had entered the intersection when he was hit. Appellant testified that he did not see ap-

pellee at any time prior to the collision.[1]  He further said that appellee was going approximately 20 miles an hour after the impact.  In my opinion these facts and circumstances demonstrate that appellant must have had a view of appellee's approaching automobile had he looked when the light turned green in his favor. I am satisfied that appellant either did not look or was inattentive when the light turned green and convicted himself of contributory negligence as a matter of law.

I would affirm the court below.

---

[1] In *Ratcliff v. Myers*, 382 Pa. 196, 201, 113 A. 2d 558, 560 (1955), the Supreme Court gave great factual weight to a similar admission when it said: "Myers himself admitted that 'seeing and hitting was one,' which is proof positive that he could not have looked up Highway Route 194 before entering the intersection. . . ."